USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 17, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
OLEG MITU,

                                 Plaintiff,

                v.

JEFFERSON B. SESSIONS III,
KIRSTJEN NIELSEN, L. FRANCIS CISSNA,
and THOMAS CIOPPA,

                               Defendants.
------------------------------------------------------- X

16 Civ. 5876 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

Plaintiff Oleg Mitu brings this petition under Section 310(c) of the Immigration and Nationality Act, 8 U.S.C. § 1421(c), and the Administrative Procedure Act, 5 U.S.C. § 702, against Attorney General Jefferson B. Sessions III, Secretary of Homeland Security Kirstjen Nielsen, Director of the United States Citizenship and Immigration Services ("USCIS") L. Francis Cissna, and USCIS New York District Director Thomas Cioppa (together, "Defendants" or "the Government"), in order to seek judicial review of USCIS's denial of his application for naturalization.[1] Both parties have cross-moved for summary judgment. For the reasons that follow, Plaintiff's motion for summary judgment is denied and Defendants' motion is granted.

---

[1]     The Clerk of Court is directed to modify the case caption as above. These Defendants have been substituted under Federal Rule of Civil Procedure 25(d) for former defendants Loretta Lynch, Jeh Johnson, Leon Rodriguez, and Phyllis Coven.

# BACKGROUND[2]

## A.  Factual Background

The relevant facts are largely undisputed.  Plaintiff, a citizen of Moldova, entered the United States in June 2000.  (Gov't 56.1 ¶¶ 1-2).  Plaintiff entered the country on a visitor visa, and he later received a student visa in 2001.  (*Id.* at ¶¶ 3-6).  While in the United States on this student visa, on September 24, 2003, Plaintiff married United States citizen Sachalie Guerra-Orta.  (*Id.* at ¶ 7; Waterman Decl., Ex. M).

Of note, in the year leading up to her marriage to Plaintiff, Guerra-Orta had married several other men, none of whom was a U.S. citizen:  On September 3, 2002, Guerra-Orta married Erkan Mineral, a native of Turkey and resident of Utica, New York; on November 18, 2002, she married Tarek Chihi, a native of Tunisia and resident of Brooklyn, New York; on January 6, 2003, she married Mahmoud Mohamed, a native of Egypt and resident of

---

[2]   This Opinion draws on evidence from the Plaintiff's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Pl. 56.1" (Dkt. #22-2)) and the exhibits attached thereto (Dkt. #22-3), as well as Defendants' Response and Counter-Statement of Material Facts Pursuant to Local Civil Rule 56.1(b) and Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1(a) ("Gov't 56.1" (Dkt. #30)), and the Declaration of Brandon M. Waterman in support of Defendants' motion ("Waterman Decl." (Dkt. #31)) and the exhibits attached thereto.  For ease of reference, the Court refers to Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment as "Pl. Br." (Dkt. #22-1), to the Government's Memorandum of Law in Support of Its Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment as "Gov't Br." (Dkt. #32), to Plaintiff's Memorandum of Law in Opposition to the Government's Cross-Motion for Summary Judgment and Reply to the Government's Opposition to Plaintiff's Motion for Summary Judgment as "Pl. Opp." (Dkt. #33), and to the Government's Reply Memorandum of Law in Further Support of Cross-Motion for Summary Judgment as "Gov't Reply" (Dkt. #34).

Brooklyn, New York; and on June 5, 2003, she married Borce Gelov, a native of Macedonia and resident of Wayne, New Jersey. (Waterman Decl., Ex. I-L).[3]

Four months after their wedding, on January 29, 2004, Guerra-Orta filed a Form I-130 Petition for an Immediate Relative on Plaintiff's behalf and Plaintiff filed a Form I-485 Application to Adjust Status to Permanent Resident. (Gov't 56.1 ¶¶ 8-9). Plaintiff and Guerra-Orta were interviewed by USCIS on June 20, 2006, and their applications were approved on July 14, 2006. (*Id.* at ¶¶ 10-11).

Four years later, on July 17, 2010, Plaintiff arrived at John F. Kennedy International Airport following a trip abroad and attempted to enter the country as a returning lawful permanent resident. (Waterman Decl., Ex. B). He was flagged as having a possible immigration issue but was permitted to enter the country. (*Id.*). Plaintiff and Guerra-Orta were granted a judgment of divorce on September 14, 2011, and Plaintiff applied for naturalization shortly thereafter on October 3, 2011. (Gov't 56.1 ¶¶ 12-13). Plaintiff was served with a Department of Homeland Security ("DHS") Notice to Appear ("NTA") on November 22, 2011. (*Id.* at ¶ 14). The NTA advised Plaintiff that he had been

---

[3] The Government proffers the facts of Guerra-Orta's 2002 marriage to Erkan Mineral and her subsequent divorce from him in 2006 as undisputed. (Gov't 56.1 ¶¶ 46-47). To corroborate these facts, the Government submits a marriage certificate and a docket entry reflecting a judgment of divorce. (Waterman Decl., Ex. I, N). Plaintiff does not contest these facts in a corresponding counterstatement as required under Local Civil Rule 56.1(b), and on that basis, they may be deemed admitted for purposes of this motion. *See* Local Civil Rule 56.1(c). During his removal proceedings, Plaintiff contested the fact of Guerra-Orta's prior marriages as possibly being the product of identity theft (Waterman Decl., Ex. D), but in his moving papers he does not appear to contest the validity of these marriages and, instead, claims that he was an unwitting victim of Guerra-Orta's bigamy. (Pl. Opp. 5). On this record, the Court will deem the fact of these prior marriages to be admitted.

"admitted to the United States, but [was] removable[.]" (Waterman Decl., Ex. A). DHS alleged that Plaintiff "[had] failed or refused to fulfill [his] marital agreement with Sachalie GUERRA-ORTA, which was entered into for the purpose of procuring [his] adjustment as an immigrant[.]" (*Id.*). DHS ordered Plaintiff to appear for removal proceedings on December 14, 2011. (*Id.*).

Plaintiff's removal proceedings before Immigration Judge Margaret McManus commenced on December 14, 2011. (Waterman Decl., Ex. C). Following a brief discussion of scheduling, the matter was put over to March 14, 2012. (*Id.*). At the March 14, 2012 proceedings, the parties discussed the allegations against Plaintiff regarding his marriage to Guerra-Orta. (*Id.*, Ex. D). Plaintiff's counsel related Guerra-Orta's claim that the earlier marriages had been procured through identity theft; the parties then had a colloquy with Judge McManus about the identification documents that Plaintiff and Guerra-Orta would have submitted at the time they applied to adjust Plaintiff's immigration status to permanent residency. (*Id.*). Judge McManus adjourned the matter again to allow DHS time (i) to find more information on the identity of the individuals who had submitted immigration documents in Guerra-Orta's name on behalf of the other individuals she married, and (ii) to look into the basis on which Plaintiff was admitted into the United States after his trip in 2010. (*Id.*).

The parties appeared before Judge McManus again on November 15, 2012; May 22, 2013; and February 5, 2014. (Waterman Decl., Ex. E-G). These sessions were not substantive and dealt with scheduling matters. (*Id.*). The

4

next substantive proceedings occurred on March 10, 2014, at which time DHS did not oppose Plaintiff's motion to terminate the proceedings without prejudice. (Waterman Decl., Ex. H). DHS did not appeal the termination. (Gov't 56.1 ¶ 20).

On June 13, 2014, Plaintiff attended a naturalization interview with USCIS. (Gov't 56.1 ¶ 22). On May 5, 2015, USCIS requested that Plaintiff provide "proof that all of Sachalie Orta Guerra's [sic] previous marriages to other individuals were terminated" and noted that Plaintiff's marriage to Guerra-Orta "was the basis for your subsequent I-130/I-485 petition/ application." (Pl. 56.1, Ex. 16; Gov't 56.1 ¶ 24).[4] In response, Plaintiff submitted a copy of his judgment of divorce from Guerra-Orta as well as a brief submitted by his counsel. (Pl. 56.1, Ex. 10). On this record, USCIS denied Plaintiff's request for naturalization on June 16, 2015; the bases for the denial were that (i) Plaintiff did not submit proof that Guerra-Orta's prior marriages had been dissolved before her September 2003 marriage to Plaintiff and (ii) because Plaintiff obtained his "permanent resident status through [his] former spouse … the validity of that marriage is relevant as to whether [he was] lawfully admitted as a permanent resident of the United States." (*Id.*; Gov't 56.1 ¶¶ 26-29).

---

4    The exhibits to Plaintiff's Local Rule 56.1 Statement of Undisputed Facts were submitted in composite form without any letter or number designations. When referring to these exhibits, the Court will use the numbers added by the Government in the courtesy copy it provided to the Court, and which it used in its Rule 56.1 Counterstatement.

5

Following USCIS's denial, Plaintiff submitted a Form N-336 to request a hearing; he attended an interview with USCIS on March 11, 2016, but the denial was affirmed on June 6, 2016. (Gov't 56.1 ¶¶ 30-32).

**B.    Procedural Background**

Plaintiff initially filed a petition for review of USCIS's decision denying his application for naturalization on July 22, 2016. (Dkt. #1). An initial pretrial conference was held on November 18, 2016, and a case management plan was filed on December 23, 2016. (Dkt. #13). After discovery concluded, Plaintiff filed the instant motion for summary judgment on June 23, 2017. (Dkt. #22). The Government filed its combined opposition to Plaintiff's motion and cross-motion for summary judgment on August 4, 2017. (Dkt. #29). Plaintiff filed his combined reply brief in support of his motion and opposition to the Government's motion on August 24, 2017 (Dkt. #33), and the Government filed its reply brief in support of its motion on September 8, 2017 (Dkt. #34). Accordingly, these motions are ripe for resolution by the Court.

## DISCUSSION

**A.    Motions for Summary Judgment Under Rule 56**

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322-23 (1986). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party.'" *Kennedy* v. *Arias*, No. 12 Civ. 4166 (KPF), 2017 WL 2895901, at *7 (S.D.N.Y. July 5, 2017) (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Where parties file[] cross-motions for summary judgment[,] … each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks omitted) (alterations in original). A party may not avoid summary judgment through a showing "that there is some metaphysical doubt as to the material facts," and instead "must come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co., Ltd.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks and citations omitted).

**B.  Plaintiff's Motion for Summary Judgment Is Denied and the Government's Motion for Summary Judgment Is Granted**

    **1.  Collateral Estoppel Does Not Apply to Plaintiff's Terminated Removal Proceedings**

Plaintiff ascribes considerable (and, it turns out, undue) weight to the effect of Judge McManus's order terminating Plaintiff's removal proceedings without prejudice. In particular, Plaintiff claims that the validity of his marriage to Guerra-Orta was already litigated before Judge McManus and cannot be revisited before this Court. (Pl. Br. 4-9). Collateral estoppel, or "issue preclusion … forecloses 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the

7

prior judgment, even if the issue recurs in the context of a different claim.'" *Schwartz* v. *HSBC Bank USA, N.A.*, 160 F. Supp. 3d 666, 674 (S.D.N.Y. 2016) (quoting *Taylor* v. *Sturgell*, 553 U.S. 880, 892 (2008)). "For collateral estoppel to apply, four elements must be satisfied: '[i] the issues of both proceedings must be identical, [ii] the relevant issues were actually litigated and decided in the prior proceeding, [iii] there must have been full and fair opportunity for the litigation of the issues in the prior proceeding, and [iv] the issues were necessary to support a valid and final judgment on the merits." *Id.* (internal quotation marks omitted) (quoting *Cent. Hudson Gas & Elec. Corp.* v. *Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995)).

The parties do not appear to contest that the issues are the same in the two proceedings or that there was a full and fair opportunity to litigate. Accordingly, the Court's analysis focuses on whether the validity of Plaintiff's marriage to Guerra-Orta was actually litigated, decided, and necessary to a valid and final judgment on the merits.

Turning to the latter issue first, Plaintiff argues that "[a] final decision by an Immigration Judge has a preclusive effect on future litigation and agency decisions." (Pl. Br. 4 (citing *Astoria Fed. Sav. & Loan Ass'n* v. *Solimino*, 501 U.S. 104, 107-08 (1991)). That may be, but numerous courts have held — as the Government notes in reply (*see* Gov't Reply 4-5) — that the termination of removal proceedings without prejudice is *not* a final judgment on the merits entitled to preclusive effect. *See, e.g.*, *Calero* v. *Lynch*, 621 F. App'x 160, 161 (4th Cir. 2015) (summary order) ("Our review of the record confirms the Board's

8

affirmance of the [Immigration Judge's] conclusion that the decision to terminate Calero's first removal proceedings was not a decision on the merits that was entitled to preclusive effect."); *Gilkes* v. *Attorney Gen. U.S.*, 617 F. App'x 168, 173 (3d Cir. 2015) (summary order) ("Dismissal of the first [Notice to Appear] without prejudice did not constitute a 'final adjudication on the merits' as required to trigger res judicata."); *Abpikar* v. *Holder*, 544 F. App'x 719, 721 (9th Cir. 2013) (summary order) ("Abpikar bases his res judicata challenge on an order from the immigration court terminating prior removal proceedings without prejudice. The removal proceedings in this case were not precluded by that order because 'a dismissal without prejudice is not a decision on the merits for purposes of res judicata.'" (quoting *Oscar* v. *Alaska Dep't of Educ.*, 541 F.3d 978, 981 (9th Cir. 2008)); *Aguilar-Aguilar* v. *Napolitano*, 700 F.3d 1238, 1243 (10th Cir. 2012) (holding that dismissal without prejudice of removal proceedings was not reviewable because it did not result in a final order of removal); *see also Sharp* v. *Coven*, No. 14 Civ. 8408 (RA), 2016 WL 817468, at *3 (S.D.N.Y. Feb. 19, 2016) (holding that the court lacked jurisdiction to consider the plaintiff's petition for citizenship that arose during removal proceedings that were terminated without prejudice and had not reached a final order).[5]

---

[5] The parties cite no controlling authority from the Second Circuit on this point, and the Court's independent research revealed none. The Second Circuit has suggested, albeit in dicta, that *res judicata* should not be applied in the immigration context in a way that would "frustrate clearly expressed congressional intent" to remove certain classes of aliens. *Channer* v. *Dep't of Homeland Sec.*, 527 F.3d 275, 280 n.4 (2d Cir. 2008).

9

The cases that Plaintiff cites to support his estoppel argument do not aid his cause: For example, *Amrollah* v. *Napolitano*, 710 F.3d 568, 571-72 (5th Cir. 2013), *Hamdan* v. *Gonzales*, 425 F.3d 1051, 1059 (7th Cir. 2005), and *Medina* v. *I.N.S.*, 993 F.2d 499, 503-04 (5th Cir. 1993), simply confirm the proposition that a final judgment on the merits in an immigration proceeding has preclusive effect. They do not address the question of whether a termination of removal proceedings without prejudice, as happened here, is a final judgment on the merits. Ultimately, the Court is persuaded that it is not.

It is notable, as Plaintiff acknowledges, that DHS has the discretion to reissue an NTA that has been dismissed without prejudice. (Pl. Opp. 4). *See Aguilar-Aguilar*, 700 F.3d at 1243 (denying petition for review where DHS moved to terminate an NTA without prejudice as improvidently issued and reinstate the proceedings on an expedited basis); *see also* 8 C.F.R. § 239.2 (permitting DHS to move to dismiss removal proceedings on several bases, including that the NTA was "improvidently issued"). Plaintiff tries to deflect this point by arguing, without authorities, that DHS may only reissue an NTA "based on newly discovered facts or new offenses committed by the respondent" (Pl. Opp. 4), but this claim is not supported by the plain text of the regulations or the Court's independent research. *See* 8 C.F.R. §§ 239.1, 239.2; *Calero*, 621 F. App'x at 161; *Singh* v. *Holder*, 379 F. App'x 578, 580 (9th Cir. 2010) (summary order) (distinguishing a prior holding that removal proceedings could not be reopened without newly discovered evidence on the basis that the

10

removal proceedings at issue had been terminated *without prejudice* and could be reopened).

The Court next considers whether the validity of the marriage was actually litigated. In this regard, the Government argues that even if the dismissal without prejudice were a final judgment on the merits, Plaintiff's collateral estoppel argument would fail nevertheless, as this issue was not "necessarily decided" by Judge McManus because she "did not make any finding whatsoever concerning the validity of [Plaintiff's] marriage." (Gov't Br. 15-16). Plaintiff counters that because the NTA alleged the invalidity of his marriage, Judge McManus implicitly made a finding that the marriage was valid when she terminated the proceedings without prejudice. (Pl. Opp. 3). And Plaintiff further suggests, again with no supporting authorities, that a dismissal without prejudice in an immigration proceeding is *not* the same as such a dismissal in civil litigation because a finding must be made in an immigration case as to the respondent's removability before any order, including a dismissal without prejudice, may issue. (*Id.* at 3-4). The Court's research does not bear this point out, and the regulations do not provide that immigration judges must make factual findings about a respondent's removability before a case can be terminated. *See* 8 C.F.R. § 239.2(c). Indeed, the very fact that the regulations permit DHS to withdraw an NTA and later reinstate removal proceedings suggests that these proceedings may be terminated before a final decision on removability. *See id*; *Aguilar-Aguilar*, 700 F.3d at 1243; *Singh*, 379 F. App'x at 580.

The Government has the better of the arguments here. The record of Plaintiff's removal proceedings reflects only a cursory colloquy with the court concerning Plaintiff's marriage: Judge McManus expressed interest in Plaintiff's contention that Guerra-Orta had been the victim of identity theft and asked DHS to look into the records of these marriages for any evidence to that effect. (Waterman Decl., Ex. D). But the court did not hold a hearing, nor did it make any factual or credibility findings. (*See id.* at Ex. C-H). Plaintiff's counsel moved to terminate the removal proceedings; DHS did not oppose the motion; and the court granted it. (*Id.* at Ex. G-H). Judge McManus's order terminating the removal proceedings is a three-line form order in which she circled the phrase "without prejudice" and signed the bottom. (Pl. 56.1, Ex. 14).

Plaintiff acknowledges that the text order does not indicate any finding regarding Plaintiff's marriage or removability, but insists nonetheless that the validity of his marriage to Guerra-Orta was "necessarily decided." (Pl. Br. 7). There is nothing in the record of Plaintiff's removal proceeding, or in the regulations governing removal proceedings, that suggests that Judge McManus could not issue this order without first making a determination that Plaintiff's marriage was valid. Judge McManus had before her an unopposed motion to terminate; she did not need to make any factual findings to issue an order granting the motion. (*See* Waterman Decl., Ex. C-H; Pl. 56.1, Ex. 14). *See also* 8 C.F.R. § 239.2. Put simply, Judge McManus did not need to make, and did not in fact make, a determination that Plaintiff was properly admitted into the

United States when she terminated Plaintiff's removal proceedings without prejudice. The Government is thus not barred by collateral estoppel from contesting the validity of Plaintiff's marriage in this proceeding.

### 2. Plaintiff Was Not Lawfully Admitted to the United States

#### a. Applicable Law

Having found that the Government may properly raise the issue of Plaintiff's marriage in this case, the Court proceeds to the clearer question of whether Plaintiff was properly admitted into the United States on the basis of his marriage to Guerra-Orta, and finds that he was not. The Court's review of USCIS's denial of Plaintiff's application for naturalization is *de novo.* 8 U.S.C. § 1421(c).

To become a naturalized citizen, an applicant must meet the statutory preconditions set forth in 8 U.S.C. § 1427. *See Gildernew* v. *Quarantillo*, 594 F.3d 131, 133 (2d Cir. 2010). An applicant must have continuously resided in the United States for at least five years (and not be absent for a continuous period of more than six months or one year), be physically present in the United States, and have good moral character. *Id.* § 1427(a)-(d). However, 8 U.S.C. § 1429 presents several antecedent requirements, including the requirement that an applicant for naturalization first be "lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter," and imposing on the applicant the burden "to show that he entered the United States lawfully." The regulation at 8 C.F.R. § 316.2(b) adds that it is the applicant's burden to show that his or her

13

admission was proper under the "immigration laws in effect at the time of the applicant's initial entry or any subsequent reentry."

An applicant for naturalization begins by completing a Form N-400 that is reviewed by USCIS to ensure consistency with the statutory requirements. 8 U.S.C. §§ 1445(a), 1446; *Phillips* v. *Lynch*, No. 15 Civ. 1514 (DRH), 2016 WL 3248307, at *3-4 (E.D.N.Y. June 9, 2016) (explaining the naturalization application process). If the application is denied, the applicant may request a hearing under 8 U.S.C. § 1447(a) before an immigration officer. If the denial is affirmed, the applicant may then pursue judicial review of the denial under 8 U.S.C. § 1421(c).

### b. Arguments of the Parties

Because Plaintiff relies so heavily on his contention that the Government is estopped from challenging the validity of his marriage to Guerra-Orta, he offers only a cursory, and ultimately unconvincing, case to support the merits of his application for naturalization. Plaintiff argues that he meets the statutory requirements for naturalization and should be granted summary judgment on that basis: He was granted permanent resident status in 2006 based on his "good faith marriage to [] Guerra-Orta"; he has continuously resided in New York since he was granted that status; he passed his English language and civics tests; and he has good moral character. (Pl. Br. 10-11). Plaintiff does not offer any proof that Guerra-Orta's prior marriages were terminated before her marriage to Plaintiff, nor does he address the validity of their marriage under New York law. (*See generally id.*).

In his opposition to the Government's cross-motion, Plaintiff offers the litigation equivalent of a "Hail Mary" pass: He argues that he is eligible for naturalization *even if* his marriage to Guerra-Orta were invalid, claiming "[Plaintiff] was eligible for an immigrant visa under 8 U.S.C. § 1154(a)(1)(A)(iii), as the spouse of a U.S. Citizen who was the subject of extreme cruelty caused by that U.S. Citizen spouse's bigamy" — namely, Guerra-Orta "duplicitously inducing [Plaintiff] to marry and knowingly sabotaging his immigration status." (Pl. Opp. 5). Plaintiff contends that "because he intended to enter into a good-faith marriage with Ms. Guerra-Orta; participated in a marriage ceremony with her, ... resided with Ms. Guerra-Orta and believed he was married to her and she, solely, to him," the marriage is a proper basis on which he may be admitted. (*Id.*).

The Government, on the other hand, argues that for Plaintiff to be "lawfully admitted" into the United States, he must show "compliance with the substantive laws in effect at the time of the admission, not simply procedural regularity." (Gov't Br. 9). Relying on *De La Rosa* v. *United States Department of Homeland Security,* the Government argues further that "admission to the United States that does not comply with substantive legal requirements, whether or not the alien engaged in fraud or was the beneficiary of someone else's fraud, is not a lawful admission for permanent residence." (*Id.* (citing *De La Rosa* v. *U.S. Dep't of Homeland Sec.*, 489 F.3d 551, 554-55 (2d Cir. 2007))). Plaintiff applied for lawful permanent resident status on the basis of his marriage to a United States citizen, which marriage, the Government contends,

was void *ab initio* under New York law. (*Id.* at 12). The New York Domestic Relations Law provides that a marriage is "absolutely void if contracted by a person whose husband or wife by a former marriage is living" unless that former marriage has been terminated. N.Y. Dom. Rel. Law § 6. Thus, because Plaintiff was admitted on the basis of a marriage that was legally void, he was not lawfully admitted to the United States and his application for naturalization was properly denied. (Gov. Br. 12-13).

    **c.    Analysis**

To review, Plaintiff submitted his Form N-400 application for naturalization on October 3, 2011, but was placed into removal proceedings on November 22, 2011, that were terminated without prejudice on March 10, 2014. (Gov't 56.1 ¶¶ 13-14, 19). His naturalization application appears to have been stayed during the pendency of the removal proceedings. On June 13, 2014, Plaintiff was interviewed by USCIS in connection with his application. (*Id.* at ¶ 22). On May 5, 2015, USCIS requested additional evidence regarding Plaintiff's marriage to Guerra-Orta; Plaintiff responded, and his application was denied on June 16, 2015, on the basis that he could not demonstrate that Guerra-Orta's prior marriages had been terminated prior to his marriage to her. (*Id.* at ¶¶ 23-29). USCIS affirmed the denial after a hearing and Plaintiff initiated this action seeking *de novo* review. (*Id.* at ¶¶ 30-32).

The Court agrees with the Government's proffered construction of the law — that an alien with lawful permanent resident status who is later found to

16

have "been ineligible for that status has not been 'lawfully admitted for permanent residence' because the 'alien is deemed, ab initio, never to have obtained lawful permanent resident status.'" *De La Rosa*, 489 F.3d at 554 (quoting *Matter of Koloamatangi*, 23 I. & N. Dec. 548 (B.I.A. 2003)); *see also Villafana* v. *Holder*, 358 F. App'x 245, 246 (2d Cir. 2009) (summary order) (citing *De La Rosa* for the proposition that "even for those who obtained their [lawful permanent resident] status by mistake rather than fraud, if petitioner fails to demonstrate that he or she had complied with the relevant substantive legal requirements at the time petitioner was admitted for permanent residence, then petitioner was never 'lawfully admitted'"); *Sergueeva* v. *Holder*, 324 F. App'x 76, 79 (2d Cir. 2009) (summary order) ("Sergueeva was not entitled to the presumption of being a returning lawful permanent resident because she was not in fact a lawful permanent resident.").

Thus, as relevant here, the Court asks whether Plaintiff was properly granted lawful permanent resident status in 2006. He was not. Plaintiff was granted that status based on his purported marriage to a United States citizen, Sachalie Guerra-Orta (*see* Waterman Decl., Ex. B), but that marriage was void *ab initio* under the New York Domestic Relations Law § 6. Under the controlling law in this Circuit, it matters not that Plaintiff may have been mistaken about the nature of his marriage to Guerra-Orta; he was not, in fact, married to her, could not have been granted lawful permanent resident status on that basis, and thus could not be naturalized on that basis.

The Government is also correct that it makes no difference whether Plaintiff could have been granted lawful permanent resident status on an alternate basis as the victim of spousal cruelty. Under 8 U.S.C. § 1154(a)(1)(A)(iii), a battered or otherwise victimized spouse can "file a petition with the Attorney General" for lawful permanent residence status. But the record makes clear that this is not the method by which Plaintiff sought admission to the United States. (Pl. 56.1, Ex. 7). Plaintiff applied for admission to this country as a spouse of a United States citizen but, whether he knew it or not, he was not married to a United States citizen. In sum, the Court sees no genuine dispute over any material fact regarding Plaintiff's application for naturalization and, further, no basis on which Plaintiff's application could have been granted. The Court grants the Government's cross-motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED but the Government's cross-motion for summary judgment is GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: January 17, 2018
New York, New York

KATHERINE POLK FAILLA
United States District Judge